UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD L. WINDERS, | : | |
| | : | |
| Plaintiff, | : | Case No. C-1-02-459 |
| | : | |
| v. | : | JUDGE WEBER |
| | : | |
| OHIO OPERATING ENGINEERS FRINGE BENEFIT PROGRAMS, | : : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW OF MAGISTRATE'S REPORT AND RECOMMENDATION AND OBJECTIONS TO SAID REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Plaintiff Ronald L. Winders ("Plaintiff") seeks to recover death benefits under a multi-employer trust fund. The trust fund is established and administered pursuant to the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. §185, et seq. ("LMRA").

Defendant, Ohio Operating Engineers Pension Fund, erroneously named as the Ohio Operating Engineers Fringe Benefit Programs in the Complaint (the "Plan"), awarded Plaintiff a lump sum death benefit in the amount of $85,795.10 – an amount equal to the total contributions made to the Plan on behalf of his father during his father's lifetime. Plaintiff initiated this lawsuit because the Plan denied his claim for a death benefit in "a significantly greater amount of money." See Plaintiff's Motion for Judgment at p.2.

The determining issue as to whether Plaintiff is entitled to a death benefit in a significantly greater amount of money is whether his father "satisfied **all requirements** for a

[pension] benefit to commence under the Plan . . . ." Agreed Administrative Record at JR-0001 through JR-0005 (emphasis added) (hereinafter "AR at ___").[1] The Plan has adopted a thorough application procedure for pension benefits. Participants are specifically advised that the completion of this procedure normally takes 60 days. The only step in this procedure that Plaintiff's father completed was the initial step, the filing of an application for pension benefits.

Just five days after the Plan acknowledged receipt of the application, Plaintiff's father died. At the time of his death, the following requirements for a pension benefit to commence had not been satisfied: (1) Plaintiff's father had not elected a payment form; (2) Plaintiff's father had not designated a beneficiary to receive the pension benefits following his death; (3) Plaintiff's father had not provided all required documents and information to the Plan; and (4) Plaintiff's father had not received the notice required by federal law that he had a ninety day period to alter his payment form election once an election had been made.

This issue was submitted to Magistrate Judge Hogan on cross-motions for judgment. On September 30, 2003, Magistrate Judge Hogan filed a Report and Recommendation (the "Recommendation"). The Recommendation thoroughly reviewed the agreed administrative record, the arguments of the parties, and controlling ERISA law and recommended that the Plan's motion for judgment be granted. See Recommendation at 11. This recommendation is based on Magistrate Judge Hogan's holding that the Plan's decision in this matter is "rational and entirely consistent with the terms of the Plan." See Recommendation at 9.

On October 10, 2003, Plaintiff filed his motion for review. Although Plaintiff argues in conclusory fashion that the Recommendation is erroneous, Plaintiff's motion merely restates his prior arguments that were reviewed and rejected by Magistrate Judge Hogan. Accordingly,

---

[1] The cited portions of the Agreed Administrative Record are attached as Exhibit A.

because the Recommendation is firmly based on controlling ERISA law and the administrative record, this Court should adopt the Recommendation and deny Plaintiff's motion for review.

## II. STANDARD OF REVIEW

Plaintiff's motion omits any reference to this Court's deferential standard of review. This standard is set forth in Rule 72(a), which provides, in part, that following an objection to a magistrate judge's decision, the district judge shall "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). This Court has held that this standard provides "'considerable deference to the determinations of magistrates. . . .'" In re Search Warrants, 889 F.Supp. 296, 298 (S.D.Ohio 1995) (quoting 7 James Wm. Moore, *Moore's Federal Practice* ¶ 72.03 (2d ed.1991)); see also Weeks v. Samsung Heavy Industries Company, Limited, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made").

The amount of deference afforded is dependent upon whether the objection relates to a factual finding or a legal conclusion. The "clearly erroneous" standard applied to a magistrate judge's factual findings was set forth by the Sixth Circuit in Heights Community Congress v. Hilltop Realty Corp., 774 F.2d 135, 140 (6th Cir. 1985):

> A finding is "clearly erroneous" when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.

Id. at 140.

As to legal conclusions, the review is "plenary" and the conclusions "are reviewed under the more lenient 'contrary to law' standard." Geiger Brothers Mechanical Contractors v. Lockheed Martin Utility Services, Inc., Case No. C-2-98-109, 2000 WL 1456916 *1 (S.D. Ohio 2000).[2] Under this standard, a magistrate judge's legal conclusions should be adopted unless they "'contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.'" Gandee v. Glaser, 785 F.Supp. 684, 686 (S.D.Ohio 1992), aff'd 19 F.3d 1432 (6th Cir. 1994) (citing Adolph Coors Co. v. Wallace, 570 F.Supp. 202, 205 (N.D.Cal. 1983)).

### III.  STATEMENT OF FACTS

The factual findings set forth in the Recommendation are firmly supported by the agreed administrative record. Although the Notice accompanying the Recommendation requires Plaintiff to "specifically identify" any factual findings that Plaintiff believes are clearly erroneous, Plaintiff's motion for review fails to identify any such findings. Accordingly, the Plan will summarize the portions of the record that support the Recommendation.

#### A.  The Plan.

The Plan is a multi-employer trust fund established for the payment of pension and death benefits. AR at 001-005. Plan participants are employees of employers covered by a collective bargaining agreement between the employer and Local Union No. 18 of the International Union of Operating Engineers (the "Union"). AR at 0008 and 0016.

The Plan is administered by the Plan Trustees and the Fund Administrator. AR at 0009 and 0041. The Plan Trustees and Fund Administrator are granted broad powers:

---

[2] All unpublished decisions are attached.

> The Trustees or the Fund Administrator, if so directed by the Trustees, shall have such powers as may be necessary to discharge their duties to administer the Plan in their sole and absolute discretion. These powers include, but not be limited to, the following:
>
> (a) to construe and interpret the Plan, decide all questions of eligibility and determine the amounts, manner and time of payment of any benefits hereunder;
>
> (b) to prescribe procedures to be followed by Participants or Beneficiaries filing applications for benefits;
>
> * * *
>
> (d) to receive from any Employer and from Participants such information as shall be necessary for the proper administration of the Plan;
>
> * * *

AR at 0041-0042. The Plan also permits the Fund Administrator to require participants "to complete and file . . . an application for benefits and all other forms approved by the Trustees and the Fund Administrator and to furnish all pertinent information requested by the Fund Administrator." AR at 0043, Section 9.04 of the Plan.

    **B.**    <u>**Death Benefits Under The Plan.**</u>

Article 7 of the Plan provides for the payment of death benefits to a participant's beneficiaries under certain circumstances. AR at 0034 ("Except as provided in this section, no death benefits shall be payable under the Plan"). The amount of death benefits under the Plan that a participant's beneficiary is entitled to receive is dependent upon whether the participant was married at the time of his death, whether the participant had begun to receive pension benefits at the time of his death, and whether the participant had satisfied all requirements for pension benefits at the time of his death. AR at 0034-0041.

Four provisions of the Plan govern the amount of death benefits. AR at 0034-0041. First, if a Plan participant dies after he has already begun to receive pension benefits under the Plan, the participant's death benefit is governed by Section 7.02 of the Plan. AR at 0034. Second, if a Plan participant dies after satisfying "all requirements" for pension benefits under the Plan, but the pension benefits had not yet begun, the participant's death benefit is governed by Section 7.03 of the Plan. AR at 0035. Next, if a Plan participant, who is married at the time of his death, dies before actual retirement, the participant's death benefit is governed by Section 7.04 of the Plan. AR at 0038-0038. Finally, Section 7.05 of the Plan is applicable if an unmarried Plan participant dies before "actual retirement." AR at 0038.

Plaintiff's father was unmarried and it is undisputed that he had not yet begun to receive pension benefits under the Plan at the time of his death. AR at 0158-0160. Accordingly, the death benefit applicable to Plaintiff's father is governed by either Section 7.03 or Section 7.05 of the Plan. AR at 0158-0160. Section 7.05 of the Plan provides as follows:

> If an unmarried Participant, including a Deferred Vested Participant, **dies before actual retirement**, his Beneficiary shall be entitled to receive a death benefit equal to the amount of Employer contributions credited under the Plan to the Participant at the time of his death.

AR at 0038 (emphasis added).

On the otherhand, if an unmarried Plan participant dies after satisfying all of the pension application requirements, the death benefit amount is governed by Section 7.03 of the Plan:

> Upon the death of a Participant who has **satisfied all requirements for a benefit to commence under the Plan, including the completion of an application with the Fund Administrator in which a payment form is elected**, prior to the actual commencement of benefits to such Participant, his Beneficiary shall have the option to receive benefits either (a) in accordance with the provision applicable to the form of benefit

>    elected by the Participant prior to his death; or (b) under the remaining provisions of this Article 7 as if the Participant had died prior to retirement.  If the Participant dies without satisfying all of the requirements for the payment of benefits under the Plan, payment of any death benefits under the Plan shall be made in accordance with the remaining provisions of this Article 7 as if the Participant had died prior to retirement, unless the Trustees determine, in a nondiscriminatory manner, to allow the Participant's Beneficiary to receive benefits in some other form.

AR at 0035, Section 7.03 of the Plan (emphasis added).

The Fund Administrator has established several forms that a Plan participant must complete in order to satisfy all requirements for pension benefits.  AR at 0087-0090 and 0094-0097.  The initial form that must be completed by a Plan participant in order to obtain pension benefits under the Plan is the Application for Pension Benefits.  AR at 0094-0097.  Once the Application for Pension Benefits is received, the participant is advised that the application process "normally takes approximately 60 days to obtain all the information needed to calculate benefits."  AR at 0112.  This 60 day period includes the completion of additional documentation that verifies the type of pension benefit that the participant wishes to receive and a review by the Fund Administrator of the participant's satisfaction of the other eligibility requirements under the Plan (e.g., years of service, employer contributions, and age).  AR at 0087-0090.

Two forms must be completed by an unmarried Plan participant in order to elect the type of pension benefit that the Plan participant seeks to receive.  AR at 0087-0090.  Unmarried Plan participants are eligible to receive two types of pension benefits under the Plan:  (1) a Life Annuity; 60 Payments Certain ("Life Annuity"); or (2) a 50% Contingent Annuitant Benefit

("Contingent Annuitant"). AR at 0087. Both of these payment types provide the participant a monthly pension payment for the remainder of his life. AR at 0087.[3]

However, the two payment types differ greatly as to the death benefit that the participant's beneficiary may later receive. AR at 0087-0088. First, the eligible beneficiaries of these two types of death benefits are different. AR at 0087. As to the Life Annuity, any "individual designated by a Participant as being entitled to receive any death benefit payable under the Plan" may be a beneficiary. AR at 0007 and 0087. As to the Contingent Annuitant, only the participant's spouse, son or daughter may be designated as the participant's beneficiary. AR at 0007 and 0087. Second, the amount of the death benefit also differs. AR at 0087. As to the Life Annuity, the beneficiary of the death benefit receives the "remainder of the unpaid 60 payments or a lump sum certain." AR at 0088. As to the Contingent Annuitant, the beneficiary receives a death benefit "equal to 50% of the monthly payments made to [the participant] during [their] lifetime . . . ." AR at 0087. Due to the potentially large difference in death benefits, participants are provided 90 days to change the payment election. AR at 0088.

    **C.**    <u>**Plaintiff's Claim For Death Benefits Under The Plan.**</u>

Plaintiff's father was a participant in the Plan. AR at 0147. On June 29, 2001, Plaintiff's father completed the initial step in applying for pension benefits under the Plan -- completing the Application for Pension Benefits. AR at 0094-0097. At the time of the application, Plaintiff's father was 61 years old, unmarried, and he applied for an Unreduced Early Retirement benefit.

---

[3] Failing to recognize the fact that both payment options available to Plaintiff's father provided for the monthly payment of benefits, Plaintiff's motion for review erroneously places great emphasis on the mere fact that "Mr. Winders selected monthly benefits." <u>See</u> Motion for Review at 14.

AR at 0095-0096.[4]  In addition, although beginning the pension application process, Plaintiff's father continued working after submitting his application.  AR at 0100.[5]

By letter, the Fund Administrator notified Plaintiff's father on July 6, 2001 that his application for pension benefits had been received.  AR at 0112.  Consistent with the Plan's standard application process, Plaintiff's father was informed that "[i]t normally takes approximately 60 days to obtain all the information needed to calculate the benefits."  AR at 0112.  This July 6, 2001 letter also included a beneficiary card for Plaintiff to complete and, because Plaintiff's father had been previously married, the Plan requested him to provide either a divorce decree or death certificate for his former wife.  AR at 0112.  This request was based, at least in part, on the fact that Plaintiff had previously identified his former wife as his designated beneficiary under the Plan.  AR at 0098.

In addition to the beneficiary card, Plaintiff's father would have also been required to notify the Plan of the form of the pension payment that he sought to receive before satisfying all requirements for pension benefits under the Plan (i.e., whether he elected a Life Annuity or Contingent Annuitant).  AR at 0087-0090.[6]  Had he not died, Plaintiff's father would have received the letter and enclosed Unmarried Member's Election of Pension Benefits included in the Administrative Record as JR-0087 through JR-0090.  The letter explicitly advises participants of the need to return a completed form before a pension benefit can commence:

> Before we can start paying any of your benefits, you must indicate
> your election of payment form on the enclosed Member's Election

---

[4] Plaintiff incorrectly states that the mere election of Unreduced Early Retirement determined the payment form. Rather, an Unreduced Early Retirement benefit simply determines the amount of pension benefits.  AR at 0029-0033. As to payment form, Article 6 of the Plan controls.  AR at 0029-0033.
[5] Plaintiff's father worked 224.50 hours in June, 2001 and 40 hours in July, 2001 before his death on July 11, 2001. AR at 0100 and 0147.
[6] The Application form completed by Plaintiff's father did permit him to apply for a Life Annuity or Contingent Annuitant benefit, but neither space was marked.  AR at 0095.

of Benefits Form, date and sign the Form and return it to us in the enclosed envelope.

AR at 0088.[7]

Plaintiff's father died before completing any forms beyond the initial Application. AR at 0092. Accordingly, the Plan calculated the death benefit pursuant to Section 7.03 of the Plan because Plaintiff's father was unmarried and he died without satisfying all requirements of the pension application process. AR at 0092 and 0149.

    D.    **Plaintiff's Claim For Death Benefits Under The Plan.**

Plaintiff was advised of the amount of death benefits he was entitled to under the Plan on July 25, 2001. AR at 0092. On September 18, 2001, Plaintiff informed the Plan that he believed that his father had completed "[a]ll paperwork" necessary for pension benefits and he requested that he be paid the death benefit in the form of the Life Annuity. AR at 0147 (Plaintiff demanded a "60 month guarantee payment plan . . ."). AR at 0147. The Plan Trustees considered the issues raised by Plaintiff on October 17, 2001 and it was determined that Plaintiff's claim for additional death benefits should be denied because Plaintiff's father had not completed the pension application process. AR at 0166.

    E.    **Magistrate Judge Hogan's Recommendation.**

The parties agreed to submit this issue on cross-motions for judgment and an agreed administrative record. See Recommendation at 1. Magistrate Judge Hogan reviewed the record and the arguments of both parties and concluded that the Plan's decision in this matter is

---

[7] The letter and enclosure (AR 0087-0089) were necessary in order for Plaintiff's father to comply with the administrative procedures set forth by the Plan, and for the Plan to maintain its tax qualified status as required by federal law. See Internal Revenue Code of 1986 Doctions 417(a)(1), 417(a)(3)(A), 417(a)(6), Treasury regulation 1.417(a)-20 Q&A-25, Internal Revenue Code of 1986 Section 3405(a)(2), and Treasury regulation 35.3405-1T Q&A-D1.

-10-

"rational and entirely consistent with the terms of the Plan." See Recommendation at 9.

Magistrate Judge Hogan's holding was based on several findings. First, Magistrate Judge Hogan concluded that the arbitrary and capricious standard of review should be applied because the Plan "grants the Plan Trustees and Fund Administrator discretionary authority to both determine eligibility for benefits and construe the terms of the plan." See Recommendation at 4. Second, Magistrate Judge Hogan reviewed Plaintiff's father's pension application and the Plan's application provisions and concluded that "it is undisputed that the required forms were not completed prior to [Plaintiff's] father's death." See Recommendation at 9.[8] Finally, Magistrate Judge Hogan rejected Plaintiff's arguments regarding the SPD and a conflict of interest, and recommended that the Plan's motion for judgment be granted because "Defendant did not abuse its discretion under the Plan in finding Plaintiff entitled only to a lump sum payment equal to the amount of Employer contributions credited under the Plan to Plaintiff's father at the time of his death." See Recommendation at 10.

## V.  ARGUMENT

Although no specific objections are identified, Plaintiff's motion for review sets forth four legal arguments for the rejection of the Recommendation. Each of the arguments were presented to and rejected by Magistrate Judge Hogan. The primary legal argument is that Magistrate Judge Hogan should not have applied the arbitrary and capricious standard of review. See Motion for Review at 1. The remaining three arguments are based on Plaintiff's erroneous position that it was simply not necessary for Plaintiff's father to complete the Plan's application

---

[8] As with his motion for judgment, Plaintiff continues to argue that his father selected a payment in the Normal Form. See Motion for Review at 14. Magistrate Judge Hogan correctly rejected this argument because the Normal Form default "does not occur until the participant becomes entitled to receive any benefit and the 90 day period 'ending on the Annuity Starting Date' expires." See Recommendation at 7; AR at 0029. It is undisputed that Plaintiff's father died prior to the occurrence of this Normal Form default.

process. As set forth below, Magistrate Judge Hogan appropriately rejected each of Plaintiff's legal positions and the Recommendation should be adopted.

      A.    **Magistrate Judge Hogan Appropriately Applied The Arbitrary And Capricious Standard Of Review.**

Magistrate Judge Hogan concluded that the arbitrary and capricious standard of review was appropriate because the Plan provided "the Plan Trustees and Fund Administrator discretionary authority to both determine eligibility for benefits and construe the terms of the plan." See Recommendation at 4. This conclusion is firmly supported by Sixth Circuit authority and the agreed administrative record.

The Sixth Circuit has repeatedly held that "[i]f a plan endows administrators with discretionary authority to interpret the plan's terms or determine participant eligibility, a court should subject administrators' interpretations to a deferential standard of review." Bagsby v. Central States, Southeast & Southwest Area Pension Fund, 162 F.3d 424, 428 (6th Cir. 1998) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) and Whisman v. Robbins, 55 F.3d 1140, 1143 (6th Cir. 1995)). This "discretionary authority does not 'hinge on incantation of the word 'discretion' or any other 'magic word.'" Admin. Committee of the Sea Ray Employees' Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 986 (6th Cir. 1999), reh'g denied, 1999 U.S. App. LEXIS 4421 (1999) (citing Johnson v. Eaton Corp., 970 F.2d 1569, 1572 (6th Cir. 1992)). Rather, discretionary authority hinges on "'whether the ERISA plan grants the administrator 'authority to determine eligibility for benefits or to construe the terms of the plan.'" Id. (citing Firestone, 489 U.S. at 115).

The Recommendation correctly concluded that the Plan at issue in this matter contains this required discretionary authority language:

> The Trustees or the Fund Administrator, if so directed by the Trustees, shall have such powers as may be necessary to discharge their duties to administer the Plan in their sole and absolute discretion. These powers include, but not be limited to, the following:
>
> (a) **to construe and interpret the Plan, decide all questions of eligibility and determine the amounts, manner and time of payment of any benefits hereunder**;

AR at 0041-0042 (emphasis added).

Finally, Magistrate Judge Hogan's application of the arbitrary and capricious standard of review is consistent with prior Sixth Circuit decisions. See Robinson, 164 F.3d at 986 (simply terms such as "construe" and "interpret" by themselves "would likely be enough to establish discretion. . ."), Brown v. National City Corp., No. 97-6130, 166 F.3d 1213, 1998 WL 787084, *2 (6th Cir. Oct. 29, 1998) (applied arbitrary and capricious standard because the plan provided that the administrator had the duty to "interpret the terms and conditions of the Plan" and that the claim is denied unless the administrator "allows such claim in full").

**B.    The Plan's Decision To Deny Plaintiff's Claim For Death Benefits Beyond The Contribution Amount Should Be Upheld Because It Was Consistent With And Pursuant To The Explicit Terms Of The Plan.**

Magistrate Judge Hogan reviewed each of the death benefit provisions set forth in the Plan and the Plan's application process for pension benefits. See Recommendation at 5-9. Based on this review of the Plan and Plaintiff's father's pension application, the Recommendation holds that the Plan's determination is "rational and entirely consistent with the terms of the Plan." See Recommendation at 9. Specifically, the Recommendation found that because Plaintiff's father's "application was never approved, *and* [Plaintiff's father] continued to work full-time following his application, it cannot logically be argued that Plaintiff's father was 'entitled to receive any [pension] benefit.'" See Recommendation at 7.

In his request for review, Plaintiff simply repeats his argument that his father completed all necessary steps for his father's pension benefit to begin prior to his father's death. <u>See</u> Motion for Review at 12-18. Magistrate Judge Hogan correctly rejected this argument because the administrative record firmly supports the conclusion that Plaintiff's father had not satisfied all requirements for pension benefits under the Plan before he died and it is inappropriate for this Court to rewrite the terms of the Plan. <u>See</u> Recommendation at 9.

The unambiguous terms of the Plan require the unmarried Plan participant to satisfy "all requirements" for pension benefits under the Plan before a Life Annuity death benefit can be paid to the participant's beneficiary. AR at 0035. These pension application requirements explicitly include "the completion of an application with the Fund Administrator **in which a payment form is elected** . . . ." AR at 0035 (emphasis added). Moreover, the Plan permits the Fund Administrator to require participants "to complete and file . . . an application for benefits and all other forms approved by the Trustees and the Fund Administrator and to furnish all pertinent information requested by the Fund Administrator." AR at 0043. Pursuant to this authority, the Fund Administrator requires participants to complete several forms before satisfying all pension application requirements and, in fact, participants are informed at the outset of the process that the process typically takes <u>sixty days</u> to complete. AR at 0112. Finally, due to the importance of the pension form election, participants are provided a ninety day period to change their payment form after filing their initial election form with the Fund Administrator. AR at 0087.

Plaintiff's father completed the Application for Pension Benefits, the first step of the application process, on June 29, 2001 (while he was still working). AR at 0094-0097. On July 11, 2001 – just eleven days after the Application for Pension Benefits was completed and five

days after the Plan acknowledged receipt of the Application by letter – Plaintiff's father died. AR at 0147.

As a result of his death, Plaintiff's father never completed any application forms beyond the initial Application for Pension Benefits. AR at 0094-0097. Of most importance, Plaintiff's father never completed a new beneficiary card naming his son as his beneficiary and he never made an election as to the form of pension payments. AR at 0087-0090. The election form is explicitly referred to in Section 7.03 of the Plan as being one of the requirements for actual retirement under the Plan: "Upon the death of a Participant who has satisfied all requirements for a benefit to commence under the Plan, including the completion of an application with the Fund Administrator in which a payment form is elected, . . ." AR at 0035 (emphasis added).

Plaintiff's position inappropriately requests this Court to ignore the explicit terms of the Plan and assume that his father would have taken the above actions had he not died on July 11, 2001. This request is contrary to ERISA and Magistrate Judge Hogan correctly rejected Plaintiff's attempt to rewrite the terms of the Plan:

> While Plaintiff offers explanations for why it was not necessary for his father to complete the required forms, it is undisputed that the required forms were not completed prior to his father's death. Certainly, Plaintiff's argument has a rational aspect to it, when viewed posthumously. Nonetheless, Plaintiff's argument assumes a chain of events which cannot be corroborated. As such, we find that it was reasonable for Defendant to find that Plaintiff's father died without satisfying all the requirements for a benefit to commence under the Plan. Such a determination is, in our opinion, rational and entirely consistent with the terms of the Plan.

See Recommendation at 9.

Accordingly, based on the plain language of the Plan and the arbitrary and capricious standard of review, the Recommendation correctly upheld the decision of the Plan because it is

unquestionably "possible to offer a reasoned explanation, based on the evidence," for the denial of Plaintiff's claim for additional death benefits. Bagsby, 162 F.3d at 428.

    C.    **The SPD Does Not Conflict With The Terms Of The Plan And It Does Not Support Plaintiff's Claim For Death Benefits.**

Plaintiff's third argument is that the SPD conflicts with the terms of the Plan. Magistrate Judge Hogan also considered this argument, reviewed the terms of both the SPD and the Plan, and concluded that "Plaintiff's argument in this respect is fundamentally flawed by a misreading of the SPD language." See Recommendation at 8. This conclusion is firmly supported by the agreed administrative record.

In his motion for review, Plaintiff again relies upon the Sixth Circuit's decision in Edwards v. State Farm Mutual Auto Ins. Co., 851 F.2d 134, 136 (6th Cir. 1988). The Edwards decision held that the terms of a summary plan description will control if the summary plan description and the plan "directly conflict." Id. However, this holding is inapplicable to this matter for two reasons.

First, unlike the Edwards decision relied on by Plaintiff, the Plan document in this matter not only contains the entire Plan, but an appendix and the entire SPD. AR at 0005 and 0056. Accordingly, Plaintiff's father "had access to the relevant Plan language" in addition to the SPD and, therefore, any alleged reliance on the terms of the SPD should be rejected. Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996), rehearing and suggestion for rehearing en banc denied (1996).

Second, and more importantly, the SPD and the Plan do not conflict. Consistent with the terms of the Plan, page 24 of the SPD describes how participants apply for pension benefits under the Plan:

> When you are ready to apply for retirement benefits, you must submit your application on the form that may be obtained from the Pension Fund office in Columbus or from any of the Local 18 district offices. Personnel at the Fund office are always ready to answer questions and assist in any way possible. **It takes approximately 60 days to process applications for Unreduced Early Retirement, Normal Retirement or Early Retirement benefits**. Applications for disability benefits may take three months or longer to process because of physical examinations, medical opinions and records that are required.

AR at 0080 (emphasis added). Based on this provision, a pension applicant simply could not believe that he had satisfied all application requirements through the mere filing of an application for pension benefits.

Moreover, as the Recommendation finds, two other SPD provisions expressly set forth the death benefit applicable to Plaintiff's father. AR at 0072-0073; Recommendation at 7. Specifically, page 17 of the SPD provides information as to the death benefit available if a participant dies as an active participant in the Plan:

> If you are **not married** at the time of your death, your beneficiary will receive a lump sum payment of the nonforfeitable Employer Contributions credited to you under the Plan.

AR at 0073 (emphasis in original). A similar statement is set forth on page 16 of the SPD. AR at 0072.

In sum, the SPD and the Plan do not conflict and, in fact, the SPD expressly supports the Plan's decision to award Plaintiff a death benefit under Section 7.05 of the Plan because Plaintiff's father died before satisfying all requirements for pension benefits to commence.

### D.     No Conflict Of Interest Exists In This Matter.

Plaintiff's final argument is that a conflict of interest exists based merely on the fact that the Plan's decision to award Plaintiff death benefits under Section 7.05 resulted in less money

being paid to Plaintiff.  See Motion for Review at 22-23.  As with his motion for judgment, this position is based upon the Sixth Circuit's recent decision in Darland v. Fortis Benefits Insurance Co., 317 F.3d 516 (6th Cir. 2003), rehearing and suggestion for rehearing en banc denied (2003).

In Darland, the Sixth Circuit held that "courts must be aware of a possible conflict of interest and consider it as a factor in determining whether the decision to deny benefits was arbitrary and capricious."  Id. at 527.  The alleged conflict of interest in Darland was the selection process for independent medical examiners.  Id. at 528.  The Darland decision did not hold that a conflict of interest is present based on the mere fact that a plan will pay less benefits to a participant.  To the contrary, because all plan decisions ultimately affect the benefits to be provided to participants, such a holding would be contrary to the arbitrary and capricious standard of review required by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Magistrate Judge Hogan reviewed the Darland decision and correctly held that it was inapplicable to this matter.  First, unlike the plan at issue in Darland, "[t]he Plan in the present case is a multi-employer trust fund that is established and administered pursuant to the ERISA and the Labor Management Relations Act of 1947, 29 U.S.C. §185, et seq. ("LMRA")."  See Recommendation at 10.  Based on this multi-employer framework, the Plan is governed by both union and employer trustees.  AR at 0061; Recommendation at 10.  These trustees reviewed Plaintiff's claim for death benefits and it was determined that Plaintiff's claim for additional death benefits should be denied.  AR at 0166; Recommendation at 10.  Finally, although the Plan's decision means that less benefits will be paid to Plaintiff, this fact will not affect the funding of the Plan because the Plan is funded through employer contributions calculated based on hours worked by participants.  AR at 0010-00012; Recommendation at 10.

Second, Magistrate Judge Hogan rejected Plaintiff's argument that the mere fact that less benefits were paid our requires a change in this Court's standard of review:

> Moreover, Plaintiff bases his argument solely upon the fact that the Plan's decision meant that it would pay considerably less to Plaintiff than if it approved Plaintiff's claim for additional benefits. Such is not sufficient, in our opinion, to constitute an actual conflict of interest. If such were the case, then virtually every plan decision to pay a participant less money would result in a conflict of interest.

See Recommendation at 10.

Accordingly, the Recommendation correctly concluded that "no conflict of interest, actual, apparent, or otherwise" exists in this matter and the appropriate standard of review is the arbitrary and capricious standard. See Recommendation at 10.

## V.     CONCLUSION

Based on the above-cited arguments and authorities, Magistrate Judge Hogan's Recommendation should be adopted and judgment should be entered in favor of Defendant on Plaintiff's claim for death benefits under the Plan.

              Respectfully submitted,

                   s/Thomas M. Tarpy
              Thomas M. Tarpy   (0021723)
              Scott A. Carroll    (0062115)
              David A. Campbell  (0066494)
              VORYS, SATER, SEYMOUR AND PEASE LLP
              52 East Gay Street
              P.O. Box 1008
              Columbus, Ohio 43216-1008
              (614) 464-6400

              Attorneys for Defendant
              Ohio Operating Engineers Pension Fund

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served on counsel for Plaintiff, Anthony J. Gertz, Gertz & Gertz, L.P.A., 401 Pike Street, Reading, Ohio 45215 and Randy J. Blankenship, Robbins, Kelly, Patterson & Tucker, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202-2417, by regular U.S. mail, postage prepaid, this 27th day of October, 2003.

                                                   s/David A. Campbell
                                                   David A. Campbell